[No. 8031.   Department One.   July 14, 1909.]

STANLEY PINICKNEFF, *Respondent*, v. C. J. JOHNSON, *Appellant*.[1]

CONTRACTS—PERFORMANCE—CERTIFICATE OF ENGINEER — CONCLUSIVENESS. · Where a railroad grading contract made two prices, one for the excavation of solid rock and one for the excavation of loose rock, under supervision by the company's engineers, and made the chief engineer's certificate final and conclusive as to the "quantities of the various kinds of work done," and an engineer's certificate, made advisedly and under direction ·from the chief engineer, included the excavation of "hard pan" as part of the "solid rock," a subcontractor is entitled to pay for the same from the principal contractor on the basis of payment for "solid rock"; as the contractor would recover pay from the company on the same basis.

CONTRACTS—BREACH—EVIDENCE—SUFFICIENCY.   A finding that a railroad contractor breached his contract with a subcontractor by ordering him to cease work is sustained by the evidence, where the subcontractor testified that the contractor's foreman ordered him to cease, and a letter from the contractor shortly after states that if he had been on the ground in place of the foreman the subcontractor would not have had a chance as long as he did have.

Appeal from a judgment of the superior court for King county, Albertson, J., entered November 21, 1908, upon findings in favor of the plaintiff, in an action on contract, after a trial before the court without a jury.   Affirmed.

*George E. de Steiguer*, for appellant.

*O. A. Tucker, Alfred E. Parker*, and *S. G. Murray*, for respondent.

[1]Reported in 102 Pac. 1047.

Gose, J.—The appellant, having a grading contract with the Chicago, Milwaukee & St. Paul Railroad Company, on July 15, 1907, entered into a written contract with the respondent, the applicable part of which is in the following language:

"King County, July 15, '07.
"Mr. C. J. Johnson, Easton, Wn.

"Dear Sir: Having read the specification, I, the undersigned propose to do the work of grading between stations 173 to stations 193 on the West Hugh Line of the Chicago, Milwaukee and St. Paul Ry. Company's road according to said company's specifications and under the supervision of their engineers at the following prices:

"Solid rock, 85c per cubic yard;
"Loose rock, 35c per cubic yard  .  .  ."

Before the completion of his contract, the respondent commenced this action, claiming that it had been breached by the appellant. The complaint stated four causes of action. The first cause of action averred the performance of certain work on the contract, that a part of the consideration had not been paid, and that before the completion of the contract the appellant ordered the respondent to cease work. The second cause of action averred that there was a subsequent oral contract entered into between the appellant and the respondent, whereby the former agreed to pay the latter a fixed price for moving hard pan, and that a part of the consideration therefor had not been paid. The third cause of action averred that the respondent had performed certain work outside of the contract at the request of the appellant, for which payment had not been made. The fourth cause of action averred that the respondent constructed a wagon road and trail for the purpose of carrying men and material to the work, and placed certain cars and material upon the line of grading to be used in carrying out his contract, that the appellant breached the contract and deprived the respondent of the use and benefit of the items mentioned, and that the respondent had not been

paid therefor. The answer denied that there was any sum due the respondent, and affirmatively alleged that the respondent had breached the contract. The specifications of the Chicago, Milwaukee & St. Paul Railroad Company were made a part of the answer. Section 30 of the specifications provides:

"The first party [meaning the company], in consideration of the fulfillment and performance of all the requirements and stipulations of this contract, and when the work shall have been in the opinion of the chief engineer completely performed and the chief engineer shall have furnished to the first party a certificate of the quantities of the various kinds of work done, which estimate shall be final and conclusive between the parties hereto, will pay to the contractor within ——— days after said certificate and estimate shall have been furnished by the chief engineer the sum which may be due under this contract agreeably to said estimates."

The case was tried to the court, resulting in a judgment for the respondent. This appeal has been taken from such judgment. The court made the following finding:

"That from the time plaintiff commenced work under said contract, to December 13, 1907, he removed the following:
"13878 cu. yds. solid rock at 85c.... $11,796.30
"2721 cu. yds. loose rock at 35c....      952.35
"5214 cu. yds. hard pan at 35c......    1,824.90."

It refused to make the following finding requested by the appellant:

"That on or before the 27th day of November, 1907, the plaintiff failed and refused to prosecute his said contract referred to in the complaint in accordance therewith or with reasonable diligence, expedition or skill."

The appellant assigns error upon the finding made, and upon the refusal of the court to make the requested finding.

The first point urged is that the court erred in classifying five thousand eight hundred and eleven yards of hard pan as solid rock. We have seen that the respondent engaged to grade according to the company's "specifications," and un-

der the "supervision of their engineers;" that one of the specifications was that the chief engineer should furnish "a certificate of quantities of the various kinds of work done, which estimate shall be final and conclusive." Before the commencement of the action the company's engineer, under the direction of the chief engineer, had certified that the five thousand eight hundred and eleven cubic yards was solid rock. This amount is included in the thirteen thousand eight hundred and seventy-eight cubic yards of solid rock mentioned in the court's finding.

The company's engineers testified that the thirteen thousand eight hundred and seventy-eight yards of solid rock "includes the material, of course, that was classified as solid rock, and not actually solid rock," and that the "chief engineer instructed to allow these proportions" of hard pan and solid rock. They further stated that the purpose of the classification was to encourage the contractors to hasten, and to insure the performance of the contract. The evidence showed that the appellant had entered upon his books the disputed item of five thousand eight hundred and eleven yards as solid rock. Under the contract the respondent was to receive eight-five cents a yard for solid rock, and thirty-five cents a yard for hard pan. It is urged that the specification which we have quoted was denied by the reply, and was not offered or admitted in evidence. Whilst this statement is true, it is unavailing to the appellant. The specification may at least be accepted as his admission as to its provisions. Reading the contract and the specification together, it is clear that the respondent was entitled to recover on the basis of the engineer's certificate made advisedly and under the directions of the chief engineer. He will not be held to the burdens and denied the benefits of the specifications. The authorities cited by the appellant are not in point. They state the familiar rule that the certificate of the engineer is not conclusive when he has been guilty of fraud, misconduct, or such gross mistake as would imply

bad faith or a failure to exercise an honest judgment. Each of these elements is not only absent in the instant case, but on the contrary it affirmatively appears that the estimate was made advisedly under the direction of the officer whose duty it was under the contract to certify the quantities of the various kinds of work done. It is clear that the appellant will be allowed compensation for the disputed item as solid rock. It would be a gross injustice, and a perversion of the law as well, to apply a different rule to the respondent. *Cummings v. Bradford*, 15 Ky. Law 155, 22 S. W. 548.

It is next urged that the respondent did not do his work according to the contract, and that the contract was actually breached by him. The learned trial court took a different view of the evidence. It did not make a direct finding as to who breached the contract; but, as we have seen, it refused to find that the respondent did not do the work according to the contract. It found that the respondent was entitled to recover compensation for certain work performed by him, and pleaded in the fourth cause of action. This compensation we have seen arose out of the appellant's breach of the contract. It is therefore clearly deducible from the findings that it was the opinion of the trial court that the contract had been breached by the appellant. There was abundant warrant in the testimony to support this view. The respondent testified that the appellant's foreman ordered him to cease work, and told him that he intended to close the camp. Whilst this is denied by the foreman, the persuasiveness of his testimony was largely diminished by his statement under oath that he was in the habit of telling the truth "when I think it is necessary." The respondent's testimony was strengthened by the statement of the appellant. Under date of December 3, 1907, he wrote the respondent a letter, wherein he stated:

"Your letter received and carefully noted. . . . If I had been up there in place of Mr. Yaw [the appellant's fore-

man] you would not have had the chance as long as you did have."

This letter was written shortly after the respondent ceased to work under his contract. It appears from the evidence that the appellant was dissatisfied with the manner in which the respondent was doing the work, and that he ordered him to discontinue.

The judgment is therefore amply sustained by competent testimony, and it will be affirmed.

RUDKIN, C. J., FULLERTON, CHADWICK, and MORRIS, JJ., concur.